WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allen R. Matthewson,<br><br>             Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>             Defendant. | No. CV-14-08204-PCT-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Allen R. Matthewson,[1] which challenges the Social Security Administration's decision to deny benefits. (Doc. 21.) For the reasons set forth below, the Court affirms that decision.

## BACKGROUND

On January 27, 2012, Plaintiff filed an application for supplemental security income, alleging a disability onset date of January 1, 2012. (Tr. 120-26.) After Plaintiff's claim was denied initially and on reconsideration, he requested a hearing, which the ALJ, Mason D. Harrell, Jr., held on August 7, 2013. (Tr. 36.) On August 30, 2013, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 21-28.)

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (*Id.*) At step one, the ALJ determined

---

[1] Defendant Commissioner notes that Plaintiff's brief employs a spelling of "Matthewson" with two t's, whereas "the Commissioner's records indicate that Plaintiff spells his name 'Mathewson.'" (Doc. 22 at 1 n.1.) The Court does not resolve this issue.
[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

that Plaintiff "has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date." (Tr. 23.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "degenerative joint and disc disease, lumbar spine, status post-operative times three, with post laminectomy syndrome, left nondominant shoulder separation with multiple surgical repairs, and degenerative joint and disc disease, cervical spine." (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. 24.)

At that point, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[3] concluding that Plaintiff could

> perform sedentary work as defined in 20 C.F.R. 404.1567(a) except stand or walk thirty minutes at a time for a total between two to four hours in an eight-hour workday, sit one hour at a time for a total of six hours in an eight-hour work-day, push or pull ten pounds maximum, only occasional reaching above shoulder level with the nondominant left upper extremity, no exposure to dangerous machinery and perform routine, repetitive tasks due to medication side effects, and miss work once a month.

(Tr. 24.) The ALJ thus determined at step four that Plaintiff could not perform his past relevant work as a union painter. (Tr. 26.) At step five, the ALJ concluded that Plaintiff

---

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[3] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

could perform jobs that exist in significant number in the national economy despite his limitations. (Tr. 27.) Given this analysis, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

The Appeals Council declined to review the decision. (Tr. 1-6.) Plaintiff filed the complaint underlying this action on October 21, 2014, seeking this Court's review of the ALJ's denial of benefits.[4] (Doc. 1.) The matter is now fully briefed before this Court. (Doc. 21, 22.)

## DISCUSSION

### I.  Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial" evidence amounts to "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### II. Analysis

Plaintiff's sole argument is that the ALJ erred by relying on the testimony of the vocational expert without resolving a purported inconsistency between the jobs the vocational expert testified that a person could perform with Plaintiff's limitations and the descriptions of those jobs in the Dictionary of Occupational Titles (DOT). (Doc. 21 at 7-8.) The ALJ found that Plaintiff can perform sedentary work, subject to certain additional limitations, one of which was "only occasional reaching above shoulder level with the nondominant left upper extremity." (Tr. 24.) At the hearing, the ALJ

---

[4] Plaintiff has authority to file this action pursuant to 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

1 questioned the vocational expert about jobs a person could perform with the Plaintiff's
2 characteristics and limitations.  (Tr. 27, 56-58.)  The vocational expert testified that such
3 a person could work as an assembler or a table worker.  (*Id.*)  The ALJ asked the
4 vocational expert whether his testimony was consistent with the DOT, and the vocational
5 expert testified, "Yes, Your Honor, with the exception [of] sitting and standing for one
6 hour.  For example, sitting and then standing and walking 30 minutes, I do not believe
7 that's specifically addressed in the DOT code, but my response is based on my education
8 and experience in this field." (Tr. 58).  The ALJ "determined that the vocational expert's
9 testimony is consistent with the information contained in the Dictionary of Occupational
10 Titles (DOT)" and concluded that Plaintiff is capable of performing such work and is thus
11 not disabled.  (*Id.*)  Plaintiff argues that the vocational expert's testimony was not
12 consistent with the DOT because "[t]he DOT describes the two identified alternative
13 occupations as requiring frequent use of both upper extremities to reach overhead" and
14 therefore those occupations "are incompatible with the limitation . . . by the ALJ from all
15 overhead reaching." (Doc. 21 at 7.)

16 In fact, the ALJ did not limit Plaintiff from "all overhead reaching."  (*Id.*)  The
17 ALJ's limitation stated that Plaintiff could "only occasionally" reach overhead with his
18 left arm. (Tr. 24.)  This limitation allows for unlimited reaching with the left arm in any
19 direction except up above shoulder level.  Moreover, it allows for unlimited reaching in
20 *any* direction with the right arm.  And even the limited activity—reaching overhead with
21 the left arm—can be performed occasionally.

22 Moreover, the DOT does *not* describe the identified occupations as requiring
23 "frequent use of both upper extremities to reach overhead." (Doc. 21 at 7.)  Both
24 occupations, "compact assembler" and "table worker," designate that the job involves
25 "Reaching: Frequently - Exists from 1/3 to 2/3 of the time."  739.687-066 COMPACT
26 ASSEMBLER, DICOT 739.687-066; 739.687-182 TABLE WORKER, DICOT 739.687-
27 182.  SSR 85-15 defines "reaching" as "extending the hands and arms in any direction."
28 There is nothing in this generalized description to indicate that it is necessary for a

compact assembler or a table worker to reach with both arms. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (holding that job requirements in the DOT are not "bilateral" and therefore do not conflict with vocational expert testimony that a person with one arm can perform the given job requirements); *Palomares v. Astrue*, 887 F. Supp. 2d 906, 920 (N.D. Cal. 2012) (no conflict between limitation of only occasional left side overhead reaching and the occupation of truck driver, which requires "constant" reaching, "[b]ecause the DOT does not require constant reaching with both arms"); *Feibusch v. Astrue,* No. 07–00244 BMK, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008) (citations omitted) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling."). Nor is there anything in the DOT description to indicate that these jobs require overhead reaching. *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) ("[E]ven a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching."). There is certainly nothing in either job description to indicate that Plaintiff must frequently do overhead reaching *and* must use both arms to do it.

Additionally, there is nothing in the description of the occupational tasks to indicate that the job entails frequent two-handed overhead reaching. A compact assembler "[j]oins upper and lower halves of vanity compacts [by inserting] pins in hinges to join halves, using fingers or tweezers[,] [a]ttaches spring catch lock by pressing it into place with pinching tool[,] [and] [f]its mirror on inside of cover." DICOT 739.687-066. A table worker "[e]xamines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." DICOT 739.687-182. Where "the tasks listed in each position's DOT description don't necessarily require above-shoulder reaching or reaching with both arms . . . the ALJ's left-arm restriction was not necessarily inconsistent with the frequent—or constant-reaching demands of the jobs identified in his step-five finding." *Brown v. Colvin*, No. CV 14-4420-JPR, 2015 WL 3823938, at *7-8 (C.D. Cal. June 19, 2015) (finding a left-arm overhead reaching limitation consistent with the enumerated tasks of vehicle cleaners, sewing-machine

operators, and mail clerks).

An ALJ must identify conflicts between a vocational expert's testimony and the DOT:

> When a [vocational expert] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert's] evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the [vocational expert] if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the [vocational expert's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-04P. In other words, the ALJ must "determine whether the expert's testimony deviates from the *Dictionary of Occupational Titles* and whether there is a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Manifestly, a "reasonable explanation for any deviation" is necessary only where the ALJ determines that a deviation exists: "[T]he ALJ must first determine whether a conflict exists. *If it does*, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*." *Id.* (emphasis added).

In determining whether the evidence provided by a vocational expert "appears to conflict with the DOT," *id.*, an ALJ may exercise his or her common sense. As Plaintiff acknowledges, (Doc. 21 at 7,) reaching is an activity "required in almost all jobs." SSR 85-15. "Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." (*Id.*) Limitations that are *not* significant—such as those affecting only one arm in only one position[5]—will not eliminate the vast majority of jobs that call for "reaching." "Varying degrees of limitations would have different effects, and the assistance of a [vocational expert] *may* be needed to determine the effects of the limitations." (*Id.*) (emphasis added). Where an

---

[5] The ALJ asked Plaintiff, "[D]o you still have some limitation of motion in your left shoulder, left arm?" Plaintiff replied, "Yes, sir." The ALJ asked, "It looks like the most you can lift it to is about your head level? [ . . . ] Is that right?" Plaintiff replied, "Yes, sir. I can shampoo my mop." (Tr. 39-40.)

- 6 -

ALJ easily perceives that a limitation is relatively minor and would not interfere with the performance of the tasks indicated in the DOT, the ALJ can properly determine that a conflict does not exist.

Plaintiff relies heavily on a Seventh Circuit case, *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). In *Prochaska*, "the ALJ asked the [vocational] expert for work that could be done by someone who could only 'occasionally reach above shoulder level,'" and the vocational expert testified that a cashier is such a job, although "a cashier's requirements, under the DOT, include 'reaching' frequently." *Id.* The Seventh Circuit considered this an "unresolved potential inconsistency":

> It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help. We cannot determine, based on the record, whether the expert's testimony regarding . . . reaching was actually inconsistent with the DOT. That determination should have been made by the ALJ in the first instance, and his failure to do so should have been identified and corrected by the Appeals Council. We will defer to an ALJ's decision if it is supported by substantial evidence, but here there is an unresolved potential inconsistency in the evidence that should have been resolved.

*Id.* (internal citation omitted).

The facts here are distinguishable from *Prochaska* in that the claimant in *Prochaska* could not reach above the shoulder level more than occasionally with either arm, whereas here Plaintiff has no limitation to reaching above shoulder level with his right arm. *Cf. Carey*, 230 F.3d at 146 (holding that job requirements in the DOT are not "bilateral" and therefore can be performed with one arm).

Moreover, *Prochaska* is not binding on this Court. The issue of whether a designation in the DOT that an occupation involves frequent "reaching" necessarily raises a potential conflict that must be explored when a claimant is limited to only occasionally reaching overhead with the non-dominant arm has not come before the Ninth Circuit.[6] This Court does not find the reasoning in *Prochaska* persuasive.

---

[6] The Ninth Circuit cited *Prochaska* in a footnote for its holding "that an ALJ's failure to make the relevant inquiries under SSR 00–4p leaves 'unresolved potential inconsistenc[ies] in the evidence.'" *Massachi*, 486 F.3d at 1154 n.20. *Massachi* did not

- 7 -

This Court is more persuaded by the Fifth Circuit's reasoning in *Carey*, which held that "an alleged conflict between the vocational expert's specific testimony that [claimant] could perform the jobs of cashier and ticket seller with one hand, and a DOT description stating that the person in those jobs will be required to have some ability to finger and handle things" does not "present any actual conflict between the vocational expert's testimony and the DOT." 230 F.3d at 146. The Fifth Circuit noted that the case before it, with facts analogous to the case at hand before this Court,[7] did "not involve the type of direct and obvious conflict at issue when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT." *Id.* at 145-46. Nor did it involve "the less obvious conflict created when the vocational expert's testimony creates a conflict or discrepancy between the ALJ's determination of the claimant's residual functional capacity and the DOT job descriptions." *Id.* at 146. Rather, "[g]iven the tangential nature of the conflict alleged," the Fifth Circuit concluded that the argument "actually reduces to a factual disagreement" and the vocational expert's uncontroverted[8] testimony provided the substantial evidence necessary to support the ALJ's determination. *Id.*

The Tenth Circuit reached the same conclusion in *Segovia*. 226 F. App'x at 804. The Tenth Circuit concluded determined that although "reaching" can encompass

---

apply this general principle of law to facts relevant to those in the present case. Here, the ALJ made the relevant inquiries under SSR 00–4p by asking the vocational expert if there were inconsistencies between his testimony and the DOT and eliciting a reasonable explanation for the only apparent conflict—the sitting, standing, and walking limitations that were not specifically addressed by the DOT. (Tr. 58.)

[7] The reaching limitations in *Carey* were more extreme than those in the present case, as Carey had no left forearm and therefore could not *ever* use it to reach in *any* direction. *Id.* at 134 ("[C]atastrophic electrical shock . . . led to the amputation of Carey's left forearm and hand.").

[8] The Fifth Circuit noted that "Carey's counsel did not raise the issue or challenge the vocational expert's testimony that the jobs of cashier and ticket seller could be performed with only one arm and hand. Carey basically contends that the vocational expert's testimony . . . should have been explored further, when Carey himself failed to do so in the administrative hearing." *Id.* The same is true here; Plaintiff's counsel declined the opportunity to cross-examine the vocational expert. (Tr. 58.)

"extending hands and arms *in any direction*," it does not follow that a job involving reaching necessary involves extending hands and arms in *every* direction:  "In these circumstances, the [vocational expert's] testimony does not conflict with the *DOT* and *SCO* so much as it clarifies how their broad categorizations apply to this specific case." *Id.* (citing *Carey,* 230 F.3d at 146).  This Court agrees with that assessment.

## CONCLUSION

Having determined that the facts of this case do not present an actual conflict between the vocational expert's testimony and the DOT, the Court holds that the ALJ's determination that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" is supported by substantial evidence.  (Tr. 27.)

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.  The Clerk of Court is directed to enter judgment accordingly.

Dated this 22nd day of December, 2015.

_____
Honorable G. Murray Snow
United States District Judge